THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**DONALD CARL STOUT,**

      **Plaintiff,**

**v.**                                                                                      **Civil Action No. 1:19cv123**
                                                         **(Judge Kleeh)**

**PRESTON COUNTY SHERRIFF [sic]
DEP'T.; SHERRIFF [sic] DANIEL
LOUGHRIE; DEPUTY RANDY
STOCKET; and OFFICER OKAN, K-9 Dog,**

      **Defendants.[1]**

## REPORT AND RECOMMENDATION

### I. Introduction

The *pro se* plaintiff, then a pre-trial detainee[2] incarcerated at the Tygart Valley Regional Jail ("TVRJ") in Belington, West Virginia, initiated this civil rights action pursuant to 42 U.S.C. § 1983 on June 14, 2019. ECF No. 1. Plaintiff has been granted permission to proceed *in forma pauperis;* his initial partial filing fee was waived but he was assessed the full fee. ECF Nos. 2, 9. Plaintiff has filed three motions for appointed counsel which were denied. ECF Nos. 5, 8, 11, 13, 41, 43. By Order entered June 19, 2019, Plaintiff was directed to correct certain deficiencies with his complaint. ECF No. 10. On June 20, 2019, Plaintiff moved to present a medical report and memorandum of law. ECF No. 12; by Order entered June 24, 2019, the motion was construed as a motion to supplement and denied as moot. ECF No. 14. On June 26, 2019, Plaintiff filed a response to the Order directing him to correct his deficiencies. ECF No. 16. By Order entered July

---

[1] Plaintiff has misspelled the name of the Preston County Sheriff's Department, the title of Sheriff Daniel Loughrie; and the surname of Defendant Stockett. The Clerk will be directed to correct the same. The correct spellings of the Defendants' names/titles will be used herein.

[2] Plaintiff is still incarcerated at the TVRJ but has since been convicted.

1, 2019, the Clerk was directed to redocket Plaintiff's later-filed page as an attachment to his complaint. ECF No. 18.  On October 7, 2019, Plaintiff filed a Motion to Present Summary Report; by Order entered March 4, 2020, the motion was construed as a motion to supplement and granted; the Clerk was directed to docket it as an attachment to the Complaint. ECF Nos. 20, 24. On April 14, 2020, Plaintiff again moved to supplement the complaint; by Order entered April 16, 2020, the motion was granted and the supplement was sealed. ECF Nos. 26, 27.

On May 6, 2020, an initial review pursuant to Local Rule of Prisoner Litigation Procedure ("LR PL P") 2 was conducted and the Defendants were ordered to answer the complaint.  ECF No. 29.  Summonses were issued for the named defendants. Id.  On June 2, 2020, Defendants Loughrie, Okin, Preston County Sheriff's Department ("PCSD"), and Stockett filed a Motion to Dismiss with a Memorandum in Support. ECF Nos. 33, 34. Defendant Stockett also filed an Answer. ECF No. 35. Because Plaintiff was proceeding *pro se*, on June 3, 2020, a Roseboro Notice issued. ECF No. 36. On June 23, 2020, Plaintiff filed a response in opposition to the Defendants' dispositive motion. ECF No. 39. On June 30, Plaintiff filed a motion for free postage and copies; by Order entered June 9, 2020, the motion was denied. ECF Nos. 40, 42. On January 4, 2021, Plaintiff filed a "Rule 16 Motion to Present Discovery Evidence." ECF No. 45.

Accordingly, this case is now before the undersigned for a review and report and recommendation pursuant LR PL P 2.

## II. Background

On July 1, 2017, the United States Marshal Service ("USMS") was assisting the PCSD on the arrest of Plaintiff. See ECF No. 1-5. The PCSD Summary Report, a copy of which Plaintiff attached to his complaint, sets forth the facts in pertinent part:

**Call Notes**
**Saturday. July 1. 2017 1203 Hours**

2

DFC Stockett spoke with U.S. Marshal Hare in regards to the location of Donald Stout. Mr. Hare advised that they had a possible location of Mr. Stout and that he would like DFC Stockett's assistance. Mr. Hare advised DFC Stockett to meet him at the state road garage in Bruceton Mills. DFC Stockett advised that he would be there in about a half an hour.

**Preston County Sheriffs Office**
103 West Main Street Kingwood, WV 26537
Phone #: 304-329-1611
Email:

**Call Summary Report**

DFC Stockett met with the Marshals along with DFC Cline and Farling. DFC Stockett was given the location which was near the Spiker trailer court along Rt. 26 in the Bruceton Mills area.

<u>+/- **1300 Hours**</u>

Officers responded to the location and parked near Spikers Trailer court. **Officers then walked through the woods to a camper that Mr. Stout was believed to be hiding** (no address listed on the map for said camper.) DFC Stockett, Cline, Farling and Marshal Hare walked along the wood line on the east side of the camper. DFC Stockett and his K-9 Okan and Farling were together and Marshal Hare and Cline were together. DFC Stockett, Okan, and Farling took cover behind a pine tree near the front door of the camper. Hare and Cline walked up towards the end of the camper. **Hare knocked on the side of the camper announcing that we were the Police and that Donald needed to come out of the camper. Officers received no response from anyone inside. The same process was repeated with the same outcome. Hare requested that DFC Stockett make K-9 Okan bark, at which time he did. The front door of the camper then opened at which time DFC Stockett could see Donald Stout standing in the doorway of the camper Donald was told to come out if** [sic] **the camper with his hands in the air, at which time he complied. Donald was looking around while he was standing outside the camper. Mr. Stout was ordered to get on the ground and place his hands behind his back at which time he failed to do so. Hare then grabbed Mr. Stout and placed him on the ground. Mr. Stout was ordered to place his hands behind his back at which time he refused to do so. DFC Stockett and Okan then moved towards Mr. Stout. DFC Stockett told Mr. Stout that if he did not place his hands behind his back that he would be bite** [sic] **by the dog. Mr. Stout still refused to do so. DFC Stockett then told K-9 to apprehend at which time he grabbed Mr. Stout on the lower right leg. DFC Stockett the[n] assisted Mr. Hare in placing handcuffs on Mr. Stout. Once Mr. Stout was placed in handcuffs, DFC Stockett then removed the K-9 from Mr. Stout**. Mr. Stout was then walked to the Officer's vehicle. U.S. Marshal, John Kaznowski was on scene as well. Mr. Kaznowski is also a paramedic and treated Mr. Stout for the wound to his leg. DFC Stockett photographed the injuries and will be uploading the photographs to evidence.com under this call number.

3

**1347 Hours**

  DFC Cline took possession of Mr. Stout and transported him to the Preston County Sheriff's Office for processing.

**1602 Hours**

  Mr. Stout was then released to the custody of Transport Officer Rowan who transported Mr. Stout to Preston Memorial Hospital for medical treatment. Mr. Stout received two stitches in two different wounds in his lower right leg. Mr. Stout was then released from Preston Memorial Hospital and was transported to Tygart Valley Regional Jail.

ECF No. 1-5 at 1 – 2 (emphasis added).

### III. Contentions of the Parties

#### A. The Complaint

In his complaint, Plaintiff raises Eighth Amendment claims of deliberate indifference and excessive force, Fourteenth Amendment due process violations, and improper training claims against defendants arising out of his July 1, 2017 arrest at the "back waters of Little Sandy Creek, Bruceton Mills, WV." ECF No. 1 at 4.

Plaintiff alleges that at the time of the incident, he was a sixty-eight-year-old pre-trial detainee, had already complied with the direction of the United States Marshal ("USM") to step out of his camper, and was lying face down on the ground, not resisting, and being handcuffed, when Deputy Stockett let the K-9 dog loose. Plaintiff alleges that the dog attacked him, biting down on the calf of Plaintiff's right leg, leaving abrasions and puncture wounds which required a trip to the emergency room to repair with stitches. Id. at 6 – 7. Plaintiff contends that the attack was so "vicious and painful" that he bit down on his own upper plate so hard that it cracked between the front teeth. Id. at 7.

Plaintiff alleges that "Deputy Okan was improperly trained for the job as a K-9 Dog," because Plaintiff was not resisting and the Marshal already had one of his hands cuffed when the dog attacked. Id.

Plaintiff alleges that the Sheriff failed to properly train Deputy Stockett before sending him out in the field with a K-9 partner. ECF No. 1-4 at 1.

Plaintiff contends that as a result of the attack, he limped for six months, still has pain in his right leg, sustained permanent scars, and experiences nightmares.  ECF No. 1-1 at 11.

Plaintiff avers that he did not administratively exhaust his claims prior to suit because the event occurred prior to incarceration. ECF No. 1 at 4 – 6.

As relief, Plaintiff requests a jury trial; Three Million Dollars in damages for "neglect, misuse of K-9, and punitive damages, medical expenses, attorney fees and Court fees [sic]." Id. at 8.

Plaintiff attaches a memorandum in support [ECF No. 1-1 at 1 – 4, 8 - 11]; copies of emergency room records [id. at 5 – 7]; copies of filings from this Court related to the dismissal of a prior iteration of this case [ECF Nos. 1-2 at 2 – 10]; a copy of the PCSD's Officer Call Summary Report [ECF No. 1-5]; and a copy of a one-page MH – Mental Health Treatment Plan for Plaintiff. ECF No. 1-7.

**B. Defendants' Motion to Dismiss**

Defendants' motion to dismiss, in which Defendant Stockett participates in part, contends that the case should be dismissed for its failure to state a claim upon which relief can be granted, because:

1) PCSD is not a proper defendant in a § 1983 action [ECF No. 34 at 4];

2) Sheriff Daniel Loughrie in his official capacity is not a proper party in a § 1983 action for the alleged failure to properly train a deputy [id. at 5];

3) the claim of failing to properly train Deputy Stockett should be dismissed as to Deputy Stockett [id.];

4) Okan, the K-9 officer, as a dog, not being a person at all, cannot therefore be a "person" subject to suit under § 1983 action. Id. at 6.

## C. **Answer of Defendant Deputy Randy Stockett**

Stockett avers that the complaint fails to state a claim upon which relief can be granted and asserts the defenses of qualified immunity, absolute immunity, and any other immunity available under the United States Constitution, the United States Code, the West Virginia Constitution, the West Virginia Code, and other applicable state and federal law. ECF No. 35 at 1. He contends that he is immune from liability and any damages because he did not cause the deprivation of any of Plaintiff's clearly established constitutional rights or privileges. Id. He asserts that his actions were at all times objectively reasonable under the circumstances. Id. at 2. He asserts the defense of insufficient service of process, arguing that Plaintiff did not timely have him served as required by the applicable Federal Rule of Civil Procedure. Id. Stockett contends that any claim for punitive damages violates his Fourteenth Amendment right to procedural due process and his Eighth Amendment right to protection from excessive fines. Id. He preserves the defenses of statute of limitations, waiver, and estoppel, as well as each and every defense set forth in Rules 8, 9, and 12 of the Federal Rules of Civil Procedure, and reserves the right to raise such additional defenses as may appear appropriate, after discovery and factual development in this case. Id. at 2 – 3.

Stockett denies that the PCSD oversaw Plaintiff's arrest. Id. at 3.  He admits that Sheriff Daniel Loughrie is the Sheriff of Preston County and as such, is in charge of Preston County's deputies; however, he denies that Sheriff Loughrie supervises his work in the K-9 Unit, and denies all other allegations against Loughrie. Id. Stockett admits that he is a Deputy

6

Sheriff for Preston County; that he was on duty and was the deputy whose K-9 was used during Plaintiff's arrest; admits that he ordered his K-9 to apprehend (i.e., bite/hold) Plaintiff after Plaintiff ignored his verbal warnings to show his hands. Id. Stockett is without information or knowledge to form a belief as to the truth of Plaintiff's allegation as to who the arresting officer was. Id. He admits that the name of the K-9 used to arrest Plaintiff was Okan. Id. He denies all other allegations concerning Okan. Id. at 3 – 4.

Stockett admits that as for Plaintiff's Ground 2 claim, he admits that he ordered the K-9 Okan to apprehend Plaintiff, but denies that the circumstances of the event were as alleged by Plaintiff; he admits that the U.S. Marshals were present during the arrest, as were other deputies. Id. at 4. Stockett denies that Plaintiff was not resisting, as Plaintiff alleges. Id.

As for Plaintiff's Ground 3 claim, Stockett denies that the K-9 Okan was improperly trained and denies that Plaintiff was not resisting. Id. Stockett denies that a U.S. Marshal already had one handcuff on Plaintiff when the dog was ordered to bite/hold. Id. Instead, Stockett avers that Plaintiff's hands were obscured from view, hidden under his torso, and he refused instructions to show his hands. Id. at 4 – 5. Stockett admits that Plaintiff was bitten on the calf of his and briefly held, sustained a bite wound, and was provided medical attention for the same immediately after his apprehension. Id. at 5. Stockett is without information to form an opinion as to the truth of Plaintiff's remaining allegations regarding his injuries and damages. Id.

Stockett denies all allegations in the complaint that are not specifically admitted or otherwise addressed, and denies that Plaintiff is entitled to the relief requested or any other relief. Id.

**D. Plaintiff's Response in Opposition**

Plaintiff reiterates his claims and arguments and attempts to refute the Defendants' on the same. He avers, for the first time, that when he was ordered to put his hands on his head to show he was not armed, it raised his shirt above his pants and because his pants were very loose due to recent weight loss, they fell down below his waist. ECF No. 39 at 2 – 3. He contends that because of this, it should have been obvious he had no weapon. Id. at 3.

He insists that the K-9 Okan should be amenable to suit under § 1983 because the dog was "an officer with a rank; a person can be sued for harm done to this K-9 dog, or could be given the death sentence for killing it, same as a police officer[,]" thus, "the equal protect act comes into play[.]" Id.

He insists that Sheriff Loughrie's having trained Deputy Stockett "is a direct involvement" in his arrest, and therefore, in the violation of his rights. Id. at 4.

Plaintiff contends that U.S. Marshal John Hare was "big and strong enough" to handcuff Plaintiff and did it alone, so there was no need to turn the K-9 loose on him. Id. at 6. Further, there were four deputies and all of them had "their weapons drawn and aimed at me and were also wearing body cams. The footage of the body cam[]s should show that and clear all this up before trial[.]" Id. at 6 – 7. He argues that at 68 years old, he could have died of a heart attack from the dog's attack, or from blood loss or infection, and thus, the attack constituted elder abuse. Id. at 7 – 8.

He contends that the defendants were timely served under the Federal Rules of Civil Procedure. Id. at 8.

He argues that he is entitled to punitive damages, and that the statute of limitations is three years. Id.

8

He disputes Stockett's Call Summary Report, saying Stockett asked Plaintiff to put his hands behind his back, "not to put his hands w[h]ere he could see them[.]" Id. at 9. He contends that the dog attack was malicious, and violated his Fifth Amendment right against double jeopardy; his Fourteenth Amendment due process rights; his Eighth Amendment right to protection from cruel and unusual punishment, his right to equal protection, and "several statutes under West Virginia Code, and United States Code, all consistent with assault." Id. at 11. He avers that the attack by the K-9 is causing him nightmares and causing him walk in his sleep; admits that he "got another Psychiatric [sic] report back in 2015 that gives me a pretty good bill of health as to my mental health." Id. at 12. He argues that he is entitled to relief for his pain and suffering and the physical damage to his leg. Id. He requests that the Defendants' dispositive motion be denied and the matter set for trial. Id.

## IV. Standard of Review

### A. Section 1983 Claims

Plaintiff is seeking relief pursuant to 42 U.S.C. § 1983. ECF No. 51 at 1. Section 1983 states in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . .

42 U.S.C. § 1983.

### B. Sufficiency of a Complaint

Whether a complaint is legally sufficient is measured by whether it meets the standards for a pleading stated in the Federal Rules of Civil Procedure. See Fed.R.Civ.P.8 (providing general rules of pleading), Fed.R.Civ.P.9 (providing rules for pleading special matters), Fed.R.Civ.P.10

(specifying pleading form), Fed.R.Civ.P.11 (requiring the signing of a pleading and stating its significance) and Fed.R.Civ.P.12(b)(6) (requiring that a complaint state a claim upon which relief can be granted). See Francis v. Giacomelli, 588 F.3d 186 (4th Cir. 2009).

Although Fed.R.Civ.P.8(c) provides that "all pleadings shall be so construed as to do substantial justice," the Fourth Circuit further holds that a "heightened pleading standard" is highly appropriate in actions against government officials. Randall v. United States, (4th Cir. 1996). See also Dunbar Corp. v. Lindsey, 905 F.2d 754, 764 (4th Cir. 1990).

## C. Motion to Dismiss Pursuant to Fed.R.Civ.P. 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of a case when a complaint fails to state a claim upon which relief can be granted. Dismissal under Rule 12(b)(6) is inappropriate unless it appears beyond doubt that the plaintiff cannot prove any set of facts to support his or her allegations. Revene v. Charles County Comm'rs., 882 F.2d 870 (4th Cir. 1989). *Pro se* complaints are held to less stringent standards than those drafted by attorneys, and the court is obliged to construe liberally such complaints. However, in Bell Atlantic Corp v. Twombly, 550 U.S. 544, 570 (2007), the Supreme Court observed that a case should be dismissed for failure to state a claim upon which relief can be granted if, viewing the well-pleaded factual allegations in the complaint as true and in the light most favorable to the plaintiff, the complaint does not contain "enough facts to state a claim to relief that is plausible on its face." While the complaint need not assert "detailed factual allegations," it must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." Id. at 555.

Courts, however, are not required to accept conclusory allegations couched as facts and nothing more when ruling on a motion to dismiss pursuant to 12(b)(6). "Factual allegations must be enough to raise a right to relief above the speculative level." Id. In addition to pleading

sufficiently specific factual allegations, a plaintiff must assert a plausible claim in the complaint that is based on cognizant legal authority. Ashcroft v. Iqbal, 556 U.S. 662 (2009) ("[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss."). "[D]etermining whether a complaint states a plausible claim is context-specific, requiring the reviewing court to draw on its experience and common sense." Id.

Because Plaintiff is proceeding *pro se*, the Court is required to liberally construe his pleadings. Estelle v. Gamble, 429 U.S. 97, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976); Haines v. Kerner, 404 U.S. 519 (1972) (*per curiam*); Loe v. Armistead, 582 F.2d 1291 (4th Cir. 1978); Gordon v. Leeke, 574 F.2d 1147 (4th Cir. 1978). While *pro se* pleadings are held to a less stringent standard than those drafted by attorneys, Haines, 404 U.S. at 520, even under this less stringent standard, a *pro se* complaint is still subject to dismissal. Id. at 520-21. The mandated liberal construction means only that if the Court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so. Barnett v. Hargett, 174 F.3d 1128 (10th Cir. 1999). However, a court may not construct the plaintiff's legal arguments for him or her. Small v. Endicott, 998 F.2d 411 (7th Cir. 1993). Nor should a court "conjure up questions never squarely presented." Beaudett v. City of Hampton, 775 F.2d 1274 (4th Cir. 1985).

## V. **Analysis**

### A. **PCSD is not a proper defendant**

Plaintiff has filed this claim under 42 U.S.C. § 1983 which provides as follows:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was

violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

Therefore, in order to state a claim under 42 U.S.C. § 1983, the plaintiff must demonstrate that a person acting under color of state law deprived him of the rights guaranteed by the Constitution or federal laws. Rendall-Baker v. Kohn, 547 U.S. 830, 838 (1982).

In the instant case, the plaintiff names the PCSD as a defendant. The PCSD is not a proper defendant because it is not a person subject to suit under 42 U.S.C. § 1983.  See Preval v. Reno, 203 F.3d 821 (4th Cir. 2000) (unpublished) ("[T]he Piedmont Regional Jail is not a 'person,' and therefore not amendable to suit under 42 U.S.C. § 1983); and Brooks v. Pembroke City Jail, 722 F.Supp. 1294, 1301 (E.D.N.C. 1989) ("Claims under § 1983 are directed at 'persons' and the jail is not a person amenable to suit."); Will v. Mich. Dep't of State Police, 491 U.S. 58 (1989) (Neither a state nor its officials acting in their official capacities are "persons" under 42 U.S.C. 1983).  This rule applies "to States or governmental entities that are considered 'arms of the State' for Eleventh Amendment purposes." Id. at 70.  Accordingly, Plaintiff's claim against the PCSD fails to state a claim upon which relief can be granted and it should be dismissed from this action.

**B.  Officer Okan, K-9, is not a proper defendant**

Likewise, Plaintiff's attempt to name a dog, Officer Okan – K-9 as a defendant in this action must also fail, because a dog is not a "person" under 42 U.S.C. § 1983. See Dye v. Wargo, 253 F.3d 296, 299 – 300 (7th Cir. 2011)(A dog is not a proper defendant in a § 1983 action); see also Mickle v. Ahmed, 444 F. Supp. 2d 601, 605 n.2 (D.S.C. Jul. 10, 2006) ("Vito K-9," a police dog, is not a "person" and, therefore, is not an appropriate Defendant to a § 1983 claim).  Therefore, Plaintiff's claims against Officer Okan, K-9, must be dismissed for failure to state a claim upon which relief can be granted.

## C. <u>Excessive Force Against During Arrest</u>

As noted *supra*, § 1983 provides a civil cause of action for state action that deprives a citizen of a right, privilege, or immunity secured by the Constitution or federal law.  42 U.S.C. § 1983.  The analysis of an excessive force claim brought under § 1983 begins with "identifying the specific constitutional right allegedly infringed by the challenged application of force." <u>Graham v. Connor</u>, 490 U.S. 386, 394, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989). Unlike Graham, however, whose excessive force claims were examined under the Fourth Amendment's "objective reasonableness standard," Fourth Amendment protections do not extend to arrestees or pretrial detainees. <u>See</u> <u>Riley v. Dorton</u>, 115 F.3d 1159, 1164 (4th Cir. 1997) (*en banc*) (holding that "the Fourth Amendment does not embrace a theory of 'continuing seizure' and does not extend to the alleged mistreatment of arrestees or pretrial detainees in custody"). In <u>Riley</u>, the Fourth Circuit held that "[t]he Fourth Amendment [only] governs claims of excessive force during the course of an arrest, investigatory stop, or other 'seizure' of a person." <u>Id.</u> at 1161.   A Fourth Amendment seizure occurs "when there is a governmental termination of freedom of movement through means intentionally applied." <u>See</u> <u>Scott v. Harris</u>,  550 U.S. 372, 385 (2007) (*quoting* <u>Brower v. County of Inyo</u>, 489 U.S. 593, 596-597, 109 S. Ct. 1378, 103 L. Ed. 2d 628 (1989) (emphasis deleted).

Nor does the Eighth Amendment have any applicability here. "Because [Plaintiff] was not an incarcerated prisoner [at the time of the alleged constitutional violation], 'his complaint of excessive force did not, therefore, arise under the Eighth Amendment.'" <u>Graham</u>, 490 U.S. at 392, n. 3; <u>see</u> <u>also</u> <u>Ingraham v. Wright</u>, 430 U.S. 651, 671, n. 4, 97 S. Ct. 1401, 51 L. Ed. 2d 711 (1977) "Eighth Amendment scrutiny is appropriate only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions . . . The State does

not acquire the power to punish[,] with which the Eighth Amendment is concerned[,] until after it has secured a formal adjudication of guilt in accordance with due process of law.").

Instead, excessive force claims by a pretrial detainee or arrestee are governed by the Due Process Clause of the Fourteenth Amendment. See Young v. Prince George's County, Maryland, 355 F.3d 751, 758 (4th Cir. 2004) (quoting Taylor v. McDuffie, 155 F.3d 479, 483 (4th Cir. 1998)). Admittedly, "[t]he point at which Fourth Amendment protections end and Fourteenth Amendment protections begin is often murky." Orem v. Rephann, 523 F.3d 442, 446 (4th Cir.  2008).

In order to prevail on an excessive force claim under the Due Process Clause of the Fourteenth Amendment, a plaintiff must show that the officer "inflicted unnecessary and wanton pain and suffering." Taylor v. McDuffie, 155 F.3d 479, 483 (4th Cir. 1998) (citing Whitley v. Albers, 475 U.S. 312, 320, 106 S.C.t 1078, 89 L. Ed. 2d 251 (1991).

> In determining whether [this] constitutional line has been crossed, a court must look to such factors as the need for the application of force, the relationship between the need and the amount of force used, the extent of the injury inflicted, and whether the force was applied in a good faith effort to maintain and restore discipline or maliciously and sadistically for the very purpose of causing harm.

Orem, 523 F.3d at 446 (quoting Johnson v. Glick, 481 F.2d 1028, 1033 (2nd Cir. 1973)

Plaintiff's complaint alleges he was subjected to excessive force while complying with officers' directives, already lying on the ground face down and not resisting.  Plaintiff contends that the Marshal was already handcuffing him when Deputy Stockett maliciously and sadistically let the K-9 loose to bite him unnecessarily. ECF No. 1 at 6 – 7; ECF No. 1-1 at 1, 8.  Plaintiff contends that the Marshal "turned quickl[]y to see what was happening, then finished cuffing me and got up. After they pulled the dog off," the Marshal looked at his leg to inspect Plaintiff's injuries. ECF No. 1-1 at 9.  Plaintiff contends that it "took awhile" for the dog's mouth to open and drop me to the ground, then the dog ran in biting my leg again." Id. at 10.

In Plaintiff's response in opposition, he argues that there was no need to use force because when his pants fell partway down it would have been obvious he had no weapon, and there were four deputies with their weapons drawn, in addition to a "big and strong" U.S. Marshal, against him, a 68-year old man. ECF No. 39 at 2 – 3.

However, in making these arguments, Plaintiff apparently overlooks the Call Summary Report ("Report") that Plaintiff himself supplemented to his complaint. The Report reveals that law enforcement got word that Plaintiff was hiding in the trailer in the woods and went there to serve a warrant on him and take him into custody.[3] Deputies Stockett, Cline, and Farling and USM Hare carefully approached the trailer along the wood line to the east of the camper, Stockett and his K-9 Okan and Farling together, and Marshal Hare and Cline together. Stockett, the dog Okan, and Farling took cover behind a pine tree near the camper's front door, while Hare and Cline walked up towards the end of the camper. Hare knocked on the side of the camper to announce the police's presence and directed Plaintiff to come out but received no response; Hare knocked again and again received no response. At that point, USM Hare requested that Stockett make the K-9 Okan bark. Once the dog did so, Plaintiff opened the door of the camper. He was directed to come out with his hands in the air, and he complied. However, once outside, Plaintiff was ordered to get down on the ground and place his hands behind his back, but he would not comply. Accordingly, USM Hare grabbed Plaintiff and placed him on the ground. Plaintiff was again ordered to place his hands behind his back, but refused to do so. Stockett and the dog Okan then moved towards

---

[3] On March 5, 2019, the Grand Jury in the Circuit Court of Preston County, West Virginia indicted Plaintiff on four felony counts for charges that occurred on or about May 24, 2017: Count One: First Degree Sexual Assault, in violation of W.Va. Code § 61-8B-3(a)(2); Count Two: Sexual Abuse by a Parent, Guardian, Custodian, or a Person in a Position of Trust, in violation of W.Va. Code § 61-8D-5(a); and Counts Three and Four: two counts of Child Abuse Resulting in Injury, in violation of W.Va. Code § 61-8D-3(a). On August 31, 2020, Plaintiff entered and Alford//Kennedy Plea to Counts One and Two; Counts Three and Four were dismissed; on September 17, 2020, Plaintiff was sentenced to a 10 – 20 year term of imprisonment. See Docket of Preston County Circuit Court, Case No. 19-F-43, available on West Virginia Circuit Express, at < https://www.wvcircuitexpress.com >

Plaintiff; Stockett told Plaintiff that if he did not comply, he would be bitten by the dog; Plaintiff still refused to cooperate. Stockett then told K-9 to apprehend, and the dog grabbed Plaintiff's lower right leg; Stockett then assisted USM Hare in applying Plaintiff's handcuffs; once cuffed, Stockett then removed the K-9 from its hold on Plaintiff's leg. ECF No. 1-5 at 1 – 2.  Plaintiff's leg wound was treated at the scene by a paramedic. After the injuries were photographed, Plaintiff was taken to a hospital where, according to his complaint, he received 4 stitches. ECF No. 1-1 at 2, 7. The Report is consistent with the version of events provided in Defendant Stockett's answer. See ECF No. 35 at 4 – 5.

However, a careful read of Plaintiff's pleadings reveals that Plaintiff actually admits that he was resistive with law enforcement during the July 1, 2017 arrest. When law enforcement arrived, Plaintiff admits he did not initially immediately come out when told to (ostensibly because he saw deputies pointing their guns at his camper). ECF No. 1-1 at 8. The Call Summary Report reveals Plaintiff had to be told twice to come out, and did not come out until the dog barked; then once outside, Plaintiff did not willingly follow orders to lie face down, both Plaintiff and the Call Summary Report note that the U.S. Marshal had to forcibly  "put [him] face down on the ground." ECF No 1-1 at 8; see also ECF No. 1-5 at 2. Plaintiff claims that the Call Summary Report is incorrect because it says Stockett asked Plaintiff to put his hands behind his back, "not to put his hands w[h]ere he could see them[.]" ECF No. 39 at 9.[4] However, Plaintiff apparently does not realize that this is an implicit admission to Defendants' version of events: if  Plaintiff was already face down on the ground, a directive to put his hands behind his back would be the same as being told to put his hands where the deputies could see them. Nonetheless, once on

---

[4] Stockett's Answer avers that Plaintiff was resistive and not cooperative, and that once placed on the ground, Plaintiff's hands were obscured from view, hidden beneath his torso, and he repeatedly refused to show his hands. ECF No. 35 at 4 – 5.

the ground, it is apparent from the Call Summary Report that Plaintiff defied orders to put his hands behind his back for cuffing three times, even after warning that the dog would be let loose. See ECF No. 1-5 at 2[5] (emphasis added).

It appears then, that Plaintiff was not cooperative at all; he twice refused orders to come outside; once outside, he refused to get down on the ground and had to be forcibly put down; once down, he had to be told three times to put his hands behind his back for cuffing – the third time, he was warned that the dog would be used, and he *still* refused. However, it is apparent that once the cuffs were in place, the dog's hold on Plaintiff was quickly removed. Plaintiff contends that the Marshal "turned quickl[]y to see what was happening [when the dog bit him], then finished cuffing me and got up. After they pulled the dog off," the Marshal looked at his leg inspect his injuries. ECF No. 1-1 at 9.  This is consistent with the Call Summary Report: "[o]nce Mr. Stout was placed in handcuffs, . . . Stockett then removed the K-9 from Mr. Stout." ECF 1-5 at 2.

Because Plaintiff does not allege that Stockett or any other officer used any improper force after restraining him, he has impliedly admitted that only the force necessary to restrain him was used. Wilson v. Flynn, 429 F.3d 465, 468 - 69 (4th Cir. 2005).

Accordingly, even viewing these facts in a light most favorable to Plaintiff, it is apparent that on Stockett did not inflict any unnecessary or wanton pain and suffering upon Plaintiff, only the force necessary to gain control over a defiant, resistive, possibly armed suspect, one who was under a warrant for serious crimes.  The only force used was the brief amount to gain control over Plaintiff in a good faith effort to get a resistive suspect to submit to being cuffed for the officers'

---

[5] Plaintiff cannot piecemeal his argument by only selecting passages that seem favorable to him.  The Call Summary Report must be read in its entirety.  Plaintiff invited a close reading of the Report by attaching it, and the Report describers a scene that does not comport with Plaintiff's claim. By attaching it, Plaintiff has helped defeat his own claim.

own safety. <u>Orem</u>, 523 F.3d at 446. While Plaintiff did sustain a small injury, it only required four sutures to close the two tiny wounds; had Plaintiff cooperated, the injury could have been avoided altogether. There is no suggestion in the record that the officers continued to use any kind of force, malicious, sadistic, or otherwise, on Plaintiff once he was cuffed; Plaintiff admits that the dog was pulled off once he was cuffed.

Further, *de minimis* injury can foreclose a Fourteenth Amendment claim. <u>Orem</u>, 523 F.3d at 447. Therefore, even when viewing the facts in a light most favorable to Plaintiff, the undersigned finds that Plaintiff has not alleged facts sufficient to show that Defendant Stockett committed a constitutional violation, thus, he has failed to state a claim upon which relief can be granted. That Plaintiff was injured during the course of arrest is unfortunate. However,

> [t]hose in detention often detest those charged with supervising their confinement, and seek to even the score through the medium of a lawsuit. The Constitution, however, does not exist to scoop up every last speck of detainee discontent. To hold that every incident involving contact between an officer and a detainee creates a constitutional action, even in the absence of injury, trivializes the nation's fundamental document.

<u>Riley</u>, 115 F.3d at 1167

Accordingly, even when viewing these facts in a light most favorable to Plaintiff as required, the undersigned finds that Plaintiff has not alleged facts sufficient to show that Defendant Stockett or any other defendant committed a constitutional violation while effectuating his arrest, thus, he has again failed to state a claim upon which relief can be granted.

## D. **Failure to Train**

Plaintiff alleges that Sheriff Daniel Loughrie failed to properly train Defendant Randy Stockett before sending him out in the field with a K-9 dog partner. ECF 1-4 at 1. Defendants argue that Sheriff Daniel Loughrie is not a proper party in his official capacity in a § 1983 action for the alleged failure to properly train a deputy and that the claim should dismissed

because Plaintiff makes no particular allegation against Loughrie, beyond asserting that he failed to train Stockett; Plaintiff does not even allege Loughrie was directly involved in Plaintiff's arrest. ECF No. 34 at 5. In his Answer, Stockett admits that Loughrie, as the Sheriff of PCSD, supervises the deputies but denies that Loughrie supervises his work in the K-9 Unit. ECF No. 35 at 3.

In response, Plaintiff avers that Loughrie's having trained Stockett is a "direct involvement" in his arrest, and therefore, in the violation of his rights. ECF No. 39 at 4.

A careful review of the complaint reveals that Plaintiff did not specify whether his suit against Sheriff Loughrie was in his individual or official capacity. There is no specific allegation of Loughrie's being directly involved in Plaintiff's arrest, nor any specific allegation that Loughrie violated any of Plaintiff's constitutional rights against Loughrie. Instead, it appears that plaintiff merely names Loughrie in his official capacity as Sheriff of Preston County.

Official capacity claims "generally represent only another way of pleading an action against an entity of which an officer is an agent." Kentucky v. Graham, 473 U.S. 159, 165 (1985) (citation and quotations omitted). Therefore, suits against state officials in their official capacities should be treated as suits against the state. Id. at 166. The United States Supreme Court has held that state officials sued in their official capacities do not constitute "persons" within the language of 42 U.S.C. § 1983. Will v. Michigan. 491 U.S. 58 (1989).

However, in Monell v. New York City Dep't of Social Services, 436 U.S. 658 (1978), the Supreme Court held that "Congress did intend municipalities and other local government units to be included among those persons to whom §1983 applies." Id. at 690. The Monell court explained that bodies of local governments may be sued under §1983 for money, declaratory, or injunctive relief where the allegedly unconstitutional action was a result of a policy or custom. Id. at 690-91.

In order for the governmental entity to be a proper party of interest, the entity's policy or custom must have played a part in the violation. Id. (citing Monell v. New York City Dept. of Social Services, 436 U.S. 658, 694 (1978)). For example, in Monell, the governmental department had an official policy compelling pregnant employees to take unpaid leave of absence before such leaves were required for medical reasons. Id. There, the policy of the department was the constitutional violation.

Plaintiff has made no allegations that would support such a finding that any policies of the PCSD are unconstitutional.

Plaintiff's response in opposition contends that because Loughrie trained Stockett, then that creates "direct involvement" in his arrest. However, as noted above, Stockett denies that Loughrie supervised his work in the K-9 Unit. Nonetheless, even if Loughrie had supervised Stockett's work in the K-9 Unit, Plaintiff's attempt to assert that Loughrie was personally involved in the violation of his constitutional rights would still fail.

There is no *respondeat superior* liability under § 1983. See Monell v. Department of Social Services, 436 U.S. 658 (1978); see also Vinnedge v. Gibbs, 550 F.2d 926, 928 (4th Cir. 1997). Instead, "liability will lie where it is affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's rights." Vinnedge, *supra*. Nonetheless, when a supervisor is not personally involved in the alleged wrongdoing, he may be liable under § 1983 if a subordinate acts pursuant to an official policy or custom for which he is responsible. Fisher v. Washington Metropolitan Area Transit Authority, 690 F.2d 1113 (4th Cir. 1982). Similarly, a supervisor may be  liable  under § 1983 if the following elements are established: "(1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a 'pervasive and unreasonable risk' of constitutional injury to citizens like the plaintiff; (2)

the supervisor's response to that knowledge was so inadequate as to show 'deliberate indifference to or tacit authorization of the alleged offensive practices,' and (3) there was an 'affirmative causal link' between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff." <u>Shaw v. Stroud</u>, 13 F.3d 791, 799 (4th Cir.), <u>cert. denied</u>, 513 U.S. 813 (1994).[6]

Because Plaintiff fails to allege any personal involvement on the part of Loughrie and does not make any allegations which reveal the presence of the required elements for supervisory liability in his complaint, Plaintiff fails to state a claim upon which relief can be granted against Loughrie.

## VI. <u>Recommendation</u>

In consideration of the foregoing, the undersigned **RECOMMENDS** that the Defendants' Motion to Dismiss [ECF No. 33] be **GRANTED,** and that Plaintiff's complaint [ECF No.1] be **DENIED** and **DISMISSED with prejudice** for the failure to state a claim upon which relief can be granted, pursuant to 28 U.S.C. 1915(e)(2)(ii).

Further, the undersigned **RECOMMENDS** that Plaintiff's pending "Rule 16 Motion to Present Discovery Evidence" [ECF No. 45] be **DENIED as moot**.

The Clerk is **DIRECTED** to correct the misspellings in the names of the defendants on the docket: the name of the Preston County Sheriff's Department should be changed from "Preston County Sheriff's Department" to "Preston County Sheriff's Department;" the title of Defendant "Sheriff" Daniel Loughrie should be changed from "Sherriff" Daniel Loughrie to "Sheriff Daniel

---

[6] "Establishing a 'pervasive' and 'unreasonable' risk of harm requires evidence that the conduct is widespread, or at least has been used on several different occasions and that the conduct engaged in by the subordinate poses an unreasonable risk of harm or constitutional injury." <u>Shaw</u>, 13 F.3d at 799. "A plaintiff may establish deliberate indifference by demonstrating a supervisor's 'continued inaction in the face of documented widespread abuses.'" <u>Id</u>.

Loughrie;" and  Defendant Deputy Randy Stockett's name should be corrected from "Deputy Randy Stocket" to "Deputy Randy Stockett."

The parties are notified that this Report and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Thomas S. Kleeh, United States District Judge.  Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), Rules 6(d) and 72(b), Federal Rules of Civil Procedure, and Rules 1(b) and 8(b) of the Rules Governing Proceedings in the United States District Courts Under Section 2254 of Title 28, United States Code, **any party shall have fourteen days (filing of objections) and then three days (mailing/service), from the date of filing this Report and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Report and Recommendation to which objection is made, and the basis of such objection.**  Objections shall not exceed ten (10) typewritten pages or twenty (20) handwritten pages, including exhibits, unless accompanied by a motion for leave to exceed the page limitations, consistent with LR PL P 12. Extension of this time period may be granted by the presiding District Judge for good cause shown.

**Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.** Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).  A copy of such objections shall be served on Judge Kleeh.

The Clerk of the Court is directed to mail a copy of this Report and Recommendation to the *pro se* Petitioner by certified mail, return receipt requested, to his last known address as reflected on the docket sheet, and to transmit a copy electronically to all counsel of record.

Finally, because this Report and Recommendation completes the referral from the District Court, the Clerk is **DIRECTED** to terminate the Magistrate Judge association with this case.

DATED: January 14, 2021

/s/ *Michael John Aloi*

MICHAEL JOHN ALOI
UNITED STATES MAGISTRATE JUDGE